IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| FLOOR AND DECOR OUTLETS OF AMERICA, INC., | Case No.: 3:24-cv-01262-AN |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| OREGON WORSTED COMPANY, | |
| Defendant. | |

        Plaintiff Floor and Decor Outlets of America, Inc. filed this action against defendant Oregon Worsted Company on August 2, 2024, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment. Defendant filed its answer on September 6, 2024, alleging counterclaims for express and implied breach of contract and declaratory judgment. On September 27, 2024, plaintiff filed a partial motion to dismiss, seeking to dismiss defendant's counterclaims. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons set forth below, plaintiff's motion is GRANTED. All of defendant's rent-related counterclaims are DISMISSED with prejudice and without leave to amend. Defendant's allegations as to waiver and estoppel are DISMISSED without prejudice. Defendant's remaining counterclaims survive, as outlined in this Opinion and Order.

**LEGAL STANDARD**

        Courts apply the same standard under the Federal Rules of Civil Procedure when evaluating the sufficiency of a counterclaim. *See, e.g.*, *Voltage Pictures, LLC v. Blake*, No. 3:14-cv-01875-AC, 2015 WL 9272880, at *2 (D. Or. Dec. 17, 2015). Under Rule 12(b)(6), a motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a

1

complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inference from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted).

## BACKGROUND

**A.     Defendant's Admissions and Allegations[1]**

Effective July 15, 2022, the parties entered into a Ground Lease Agreement (the "Lease") for land located at Highway 217 and Allen Boulevard in Beaverton, Washington County, Oregon (the "Premises"). Compl., ECF [1], ¶ 6 & Ex. A, at 1 (referring to pagination of exhibit); Answer, Aff. Defenses, & Counterclaims (the "Answer"), ECF [60], at 2 ¶ 6, 4 ¶ 22. Plaintiff leased the Premises for the purpose of constructing and operating a new retail and distribution store. Compl. ¶ 11; Answer 2 ¶ 11. A true and

---

[1] Unless stated otherwise, defendant admits to or affirmatively alleges the facts within this section.

correct copy of the Lease is attached to plaintiff's complaint as Exhibit A. Compl. ¶ 6 & Ex. A; Answer 2 ¶ 6, 20 ¶ 5. The parties amended the Lease in October 2022 (the "Lease Amendment"). Compl. ¶ 7 & Ex. B; Answer 2 ¶ 7. A true and correct copy of the Lease Amendment is attached to plaintiff's complaint as Exhibit B. Compl. ¶ 7 & Ex. B; Answer 2 ¶ 7.

Defendant also owns the land surrounding the Premises, including an adjacent parcel upon which a hotel is being developed. Compl. ¶ 12; Answer 2 ¶ 12, 20 ¶ 6. The Lease sets forth certain construction work to be performed by or at the direction of defendant, including, in relevant part, certain utility work (the "Utility Work") and off-Premises work ("Offsite Work") (together, the "Landlord Work"[2]) required for plaintiff to obtain the necessary permits (the "Permits") to open and operate its retail store. Answer 2-3 ¶¶ 14, 16; *see* Compl. ¶¶ 14, 16 & Exs. A & B-1. The Utility Work and Offsite Work was scheduled to be due August 9, 2023, and December 27, 2023, respectively. Compl ¶¶ 24, 32; Answer 5 ¶ 24, 6 ¶ 32. Defendant concedes that delays occurred related to the Utility Work and Offsite Work but alleges that the delays were beyond defendant's control and subject to the force majeure clause found in Section 35(k) of the Lease. *See* Answer 3 ¶ 18, 6-7 ¶¶ 33-34.

Defendant further alleges that under the Lease, plaintiff "only had the right to take possession of and construct a retail store on the Premises on or after the Commencement Date." Answer 20 ¶ 7. The Lease defines the Commencement Date as follows:

> "The later of (i) the date on which [defendant] has delivered possession of the Premises to [plaintiff] with the Landlord Work completed and all personal property and equipment of [defendant] and any other party removed and (ii) the earlier of (A) the Permitting Expiration Date or (B) the date that [plaintiff] has waived its right to terminate this Lease under Section 2(i) of this Lease in writing."

Compl. Ex. A, at 1 (emphasis in original); Answer 20 ¶ 7. Regarding option (i), the parties agree that defendant has not delivered possession of the Premises to plaintiff with the Landlord Work completed. *See* Compl. ¶ 30; Answer 22 ¶ 18; Pl. Mot. 4. As to option (ii)(A), the parties agree that this option is governed by the Permitting Expiration Date, which the parties further agree is June 10, 2023. *See* Compl. ¶ 23;

---

[2] For clarity, the Court acknowledges that the Landlord Work, as that term is defined in the Lease, encompasses more than just the Utility Work and Offsite Work. *See* Compl. Ex. A, at 42-44.

Answer 20 ¶ 8; Pl. Mot. 4; Def. Resp. Opp'n Pl. Mot. ("Def. Resp."), ECF [11], at 9 & n.4. Thus, the parties agree that the Commencement Date is determined by the date of completion of the Landlord Work. Answer 20 ¶ 9; Pl. Mot. 4; *see* Compl. ¶ 32. Nevertheless, defendant alleges that because plaintiff began construction of its retail store before both the Landlord Work was complete and the Permitting Expiration Date, "the Commencement Date is not later than June 10, 2023[,]" and plaintiff "intentionally relinquished its right [to] assert [that] the Commencement Date is anything past" that date. Answer 20 ¶ 9 & n.1, 21 ¶ 12.

Defendant further alleges that despite prematurely taking possession of and beginning construction on the Premises, plaintiff has not paid rent. Answer 23 ¶¶ 22-23, 25; Def. Resp. 1-2, 10. The parties agree that the Lease defines the "Rent Commencement Date," in relevant part, as "the earlier of (i) one (1) year after the Commencement Date or (ii) the date that [plaintiff] opens for business to the general public in the Premises[.]" Compl. Ex. A, at 1; *see* Pl. Mot. 4; Def. Resp. 10. Defendant argues that because plaintiff is estopped from arguing that the Commencement Date is later than June 10, 2023, the latest that option (i) could conceivably be is June 10, 2024. Def. Resp. 10; *see* Answer 22-23 ¶¶ 21-22 (footnote omitted). Defendant does not dispute that plaintiff has not opened for business to the general public in the Premises, and therefore, option (ii) has not occurred. *See* Pl. Mot. 3. Thus, defendant asserts that the latest the Rent Commencement Date could be is June 10, 2024, and that plaintiff owes rent from that date onward. Def. Resp. 10; Answer 23 ¶ 22.

Defendant alleges that it notified plaintiff that the Rent Commencement Date is not later than June 10, 2024, and demanded payment of all rents due via a letter dated July 15, 2024. Answer 23 ¶ 22. Defendant further alleges that plaintiff refused to pay rent "despite having taken possession of the Premises and substantially completing construction of its retail store." *Id.* at 23 ¶ 23. Defendant then demanded, in accordance with Section 28(b)(ii) of the Lease, that plaintiff surrender possession of the Premises by September 9, 2024, but plaintiff did not and still has not done so. *Id.* at 23 ¶¶ 24-25. Finally, defendant alleges that it demanded, in accordance with Section 3(c) of the Lease, that plaintiff execute a commencement date agreement, but that plaintiff refused. *Id.* at 23-24 ¶¶ 28-30. Based on these and other

4

allegations, defendant asserts two counterclaims, for (1) two counts of breach of contract, for (a) express and (b) implied breach of contract, and (2) declaratory judgment. *Id.* at 28-30 ¶¶ 52-64.

Count one of defendant's breach of contract counterclaim asserts that plaintiff violated the lease by (a) failing to pay rent; (b) failing to pay a late charge resulting from and interest on unpaid rent; (c) failing to surrender the Premises by September 9, 2024; and (d) refusing to execute a commencement date agreement at defendant's request. *Id.* at 28 ¶ 54. Count two of defendant's breach of contract counterclaim asserts that plaintiff "breached the implied covenant of good faith and fair dealing by, among other things, attempting to . . . [have defendant] bill[ed] [] for costs that are [plaintiff's] responsibility[], improperly withholding [r]ent, wrongfully rejecting [defendant]'s claims of [f]orce [m]ajeure, and wrongfully attempting to interfere with construction of the [h]otel by demanding that shared parking be constructed in the Staging Area." *Id.* at 29 ¶ 60. Defendant's counterclaim for declaratory judgment asserts that defendant "is entitled to an Order: [declaring that] (a) [] the Commencement Date is not later than June 10, 2023; (b) the Rent Commencement Date is not later than June 10, 2024; (c) [f]orce [m]ajeure applies to [the] Landlord[] Work; and (d) [plaintiff] is to surrender possession of the Premises to [defendant]." *Id.* at 30 ¶ 64.

**B.     Instant Motion**

On September 27, 2024, plaintiff moved to dismiss defendant's counterclaims under Rule 12(b)(6). Pl. Mot. 1-2. Plaintiff argues that defendant's counterclaims "are predicated on [defendant] proving [that] rent is due and owing under the Lease[,]" and that the plain language of the Lease makes clear that rent is not due because neither of the conditions triggering either the Commencement Date or Rent Commencement Date have occurred. *Id.* at 2.

Defendant timely filed a response to plaintiff's motion to dismiss. Defendant asserts that plaintiff "voluntarily and intentionally took early possession and had beneficial use of the Premises before [the] Landlord[] Work was complete and before June 10, 2023[,]" and "[a]s a result, [plaintiff] has enjoyed the benefits of the Lease for at least [sixteen] months and its obligation to pay [r]ent has been triggered." Def. Resp. 1-2. Defendant argues that "[a]ccepting [its] allegations as true, as the court must at this stage,

5

[defendant] has properly plead[ed] [that plaintiff] took possession and prematurely began construction before [plaintiff] was otherwise entitled to do so" and in violation of the Lease. *Id.* at 10. Defendant further argues that it has pleaded that "the actual Commencement Date is the date that [plaintiff] began construction efforts, that [plaintiff] waived any right to argue otherwise, and that [r]ent was due one[]year later, but not paid despite [defendant]'s demand[,]" and that these allegations offer "at least one plausible theory that [plaintiff] breached the Lease, [and therefore] the Court should deny [the] motion to dismiss." *Id.*

## DISCUSSION

### A.    Applicable Law

1.    *Choice of Law*

"A federal court sitting in diversity applies the forum state's choice of law rules to determine what law applies." *NUE, LLC v. Or. Mut. Ins. Co.*, 558 F. Supp. 3d 1000, 1005 (2021) (citing *Ala. Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 975 (9th Cir. 2013)). Thus, Oregon's choice of law rules apply. Oregon law provides that "when parties to a contract clearly express in the contract the law that applies, 'the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen.'" *Id.* (citing Or. Rev. Stat. § 15.350(1)-(2)). The parties' Lease provides, and the parties both agree, that Oregon law shall apply. *See* Compl. Ex. A, at 33; Pl. Mot. 9; Def. Resp. 4.

2.    *Contract Interpretation*

Under Oregon law, the guiding principle for courts interpreting contracts, including leases, is the parties' intent at the time of the contract's formation. *See, e.g.*, *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Res. v. California*, 813 F.3d 1155, 1165 (9th Cir. 2015); *Ross Dress for Less, Inc. v. Makarios-Or., LLC*, 210 F. Supp. 3d 1259, 1263 (D. Or. 2016) (citing *Stark St. Props., Inc. v. Teufel*, 277 Or. 649, 658, 562 P.2d 531 (1977); *McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 212 Or. App. 7, 12, 157 P.3d 291 (2007) (citing Or. Rev. Stat. § 42.240; *Yogman v. Parrott*, 325 Or. 358, 364, 937 P.2d 1019 (1997) (en banc)); *Harold Schnitzer Props. v. Tradewell Grp., Inc.*, 104 Or. App. 19, 23, 799 P.2d 180 (1990) ("Oregon treats a commercial lease as a contract and, in the absence of a provision in the lease to the contrary, ordinary contract principles apply.").

Oregon courts employ a three-step test for interpreting contracts. *Yogman*, 325 Or. at 364. First, the court asks whether the disputed contract provisions are ambiguous. *Id.* at 363. "A contractual provision is 'ambiguous' only if it is capable of more than one plausible and reasonable interpretation." *McKay's Mkt. of Coos Bay, Inc.*, 212 Or. App. at 12 (citing *Batzer Constr., Inc. v. Boyer*, 204 Or. App. 309, 313, 129 P.3d 773 (2006)). Likewise, "[i]f a contract's provisions are mutually inconsistent regarding a subject, the contract is ambiguous as to that subject, . . . unless the provisions can be reconciled in reading the contract as a whole." *Madson v. W. Or. Conf. Ass'n of Seventh-Day Adventists*, 209 Or. App. 380, 384, 149 P.3d 217 (2006) (citing *Alpine Mountain Homes v. Bear Creek Homes*, 202 Or. App. 390, 398, 122 P.3d 111 (2005); *Portland Fire Fighters' Ass'n, Local 43 v. City of Portland*, 181 Or. App. 85, 91, 45 P.3d 162 (2002) (en banc); *Yogman*, 325 Or. at 361). Whether the provisions "'of a contract are ambiguous is a question of law.'" *Yogman*, 325 Or. at 361 (quoting *Eagle Inds., Inc. v. Thompson*, 321 Or. 398, 405, 900 P.2d 475 (1995)). If the provisions are unambiguous, the court's inquiry ends, and the court "enforce[s] the provision[s] according to [their] terms[.]" *McKay's Mkt. of Coos Bay, Inc.*, 212 Or. App. at 12 (citing *Eagle Inds.*, 321 Or. at 405); *see Key Contracting, Inc. v. Contech Int'l, LLC*, No. 3:17-cv-01599-SI, 2018 WL 2105376, at *2 (D. Or. May 7, 2018) ("The analysis ends if the meaning of the provision is clear from the text and context of the contract."). "The court 'cannot ignore provisions that are expressly included in the agreement; if a construction is inconsistent with any of those express terms, it is not reasonable.'" *Principal Life Ins. Co. v. Robinson*, No. 00-cv-01345-BR, 2006 WL 508314, at *5 (D. Or. Feb. 27, 2006) (quoting *Koch v. Spann*, 193 Or. App. 608, 613, 92 P.3d 146 (2004)). If the provisions are ambiguous, the court proceeds to step two. *Id.*, at *3 (citing *Yogman*, 325 Or. at 363).

At the second step, the court is tasked with looking at evidence outside of the contract to ascertain the parties' intent. *Id.* (citing *Yogman*, 325 Or. at 363). Direct extrinsic evidence might include "manifestations of intent" or "expressions of any common understanding communicated by the parties." *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 501 F. Supp. 3d 965, 971 (D. Or. Nov. 18, 2020) (citing *Apeldyn Corp. v. Eidos, LLC*, 943 F. Supp. 2d 1145, 1149 (D. Or. 2013)). Without direct evidence, the court considers indirect evidence such as "the parties' course of dealing or their performance during the

term of the contract as relevant circumstantial, or inferential, evidence of their common understanding, if any, of the ambiguous provision[s]." *Id.* (citing *Apeldyn Corp.*, 943 F. Supp. 2d at 1149). If there is sufficient extrinsic evidence to ascertain the parties' intent, the court's inquiry ends. *See Ross Dress for Less, Inc.*, 210 F. Supp. 3d at 1264 (citing *Yogman*, 325 Or. at 364).

If there is no or insufficient evidence to allow the court to ascertain the parties' intent, the court proceeds to the final step of the analysis: consideration of "'appropriate maxims of construction.'" *McKay's Mkt. of Coos Bay, Inc.*, 212 Or. App. at 12 (quoting *Yogman*, 325 Or. at 364).

**B.    Analysis**

    1.    *Rent-Related Counterclaims*

Central to plaintiff's motion is the question of whether the Commencement Date and Rent Commencement Date have occurred and, relatedly, whether rent is yet due. Plaintiff argues that the Lease provisions defining the Commencement Date and Rent Commencement Date are unambiguous and should be enforced by their plain terms, which indicate that neither date has yet occurred and, thus, that rent is not yet due. Defendant argues that the provisions are ambiguous and, therefore, plaintiff's motion should be denied.

As noted, the Lease defines the Commencement Date as follows:

> "The later of (i) the date on which [defendant] has delivered possession of the Premises to [plaintiff] with the Landlord Work completed and all personal property and equipment of [defendant] and any other party removed and (ii) the earlier of (A) the Permitting Expiration Date or (B) the date that [plaintiff] has waived its right to terminate this Lease under Section 2(i) of this Lease in writing."

Compl. Ex. A, at 1 (emphasis in original). The parties agree that defendant has not yet delivered possession of the Premises with the Landlord Work complete. The parties also agree that option (ii) is controlled by the Permitting Expiration Date, which the parties agree is June 10, 2023. Where option (ii) has occurred but option (i) has not, option (i) must necessarily be the later option to occur. Thus, for purposes of determining the Commencement Date, option (i) controls. Because the parties agree that defendant has not yet delivered possession of the Premises with the Landlord Work complete, the Commencement Date cannot yet be determined.

Again, as noted above, the Lease defines the Rent Commencement Date, in relevant part, as "the earlier of (i) one (1) year after the Commencement Date or (ii) the date that [plaintiff] opens for business to the general public in the Premises[.]" *Id.* Regarding this provision, option (i) has not occurred because, as just discussed, the Commencement Date has not occurred. Option (ii) has not occurred because, as noted above, defendant concedes that plaintiff has not yet opened for business to the general public in the Premises. Because neither options (i) nor (ii) have occurred, the Rent Commencement Date cannot yet be determined.

These provisions defining the Commencement Date and Rent Commencement Date are not ambiguous. There is no other plausible or reasonable interpretation of them. The Court has quoted the provisions in full, and they do not provide for or reference any alternative or additional definition or asterisk to the definitions of these terms. Furthermore, no other provisions within the Lease provide for or reference any alternative or additional definition or asterisk to the definition of these terms. Because these disputed provisions are unambiguous when considered both alone and in the context of the Lease as a whole, the Court enforces them according to their terms and concludes that neither the Commencement Date nor Rent Commencement Date have yet occurred.

Defendant's arguments do not alter this conclusion. Defendant argues that it has pleaded facts that support a plausible other interpretation of the relevant provisions: "that [plaintiff]'s rent obligations were triggered when it took possession of the Premises and started construction[.]" Def. Resp. 6. However, nothing within the Lease states that if plaintiff prematurely takes possession of or begins construction on the Premises, then the Commencement Date, and thus, the Rent Commencement Date, are triggered as a result. While the Court must accept all *well-pleaded* factual allegations as true, the Court is "not . . . required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Certain of defendant's allegations, *e.g.*, that "the Commencement Date is not later than June 10, 2023," Answer 16 ¶ 108, and "the Rent Commencement [D]ate is not later than June 10, 2024[,]" *id.* at 24 ¶ 34,

9

plainly contradict the language of the Lease and simply cannot be considered "sensible and reasonable interpretation[s]" of the disputed provisions. *Schray v. Fireman's Fund Ins. Co.*, 402 F. Supp. 2d 1212, 1216 (D. Or. 2005) (citing *D & D Co. v. Kaufman*, 139 Or. App. 459, 462, 912 P.2d 411 (1996)).

To bolster its argument, defendant points to a provision within the Lease that describes plaintiff's ability to access the Premises prior to completion of the Landlord Work, as well as Sections 2(b) and (c) of the Lease, which relate to plaintiff's possession of the Premises. *See* Def. Resp. 7-8. The Court addresses these arguments in turn.

Defendant first cites the following provision from the Construction Provisions:

"**Access by [Plaintiff] Prior to Completion of the Landlord Work.** [Plaintiff] shall have the right to come onto the Land to inspect the Landlord Work from time to time during the course of performance prior to the Completion Date, upon reasonable prior notice to [defendant]. [Defendant] reserves the right to have its representatives accompany [plaintiff] during such inspections. [Plaintiff]'s inspecting parties, contractors, agents, employees, licensees and invitees shall conduct their activities and store their property in such a manner as to not interfere with or interrupt activities on the Land in any manner."

Compl. Ex. A, at 43. This provision does not discuss or otherwise reference either the Commencement Date or the Rent Commencement Date. It does address plaintiff's right to come onto the Premises and surrounding land to inspect the Landlord Work, but it does not state that violation of the provision (whether by taking possession of the Premises prematurely, beginning construction prematurely, interfering with or interrupting defendant's activities, or some other violation) would trigger or otherwise alter the previously defined Commencement Date and Rent Commencement Date. For these reasons, consideration of this provision does not change the Court's conclusion that the provisions defining the Commencement Date and Rent Commencement Date are unambiguous and should be enforced according to their terms.

Defendant also cites Sections 2(b) and (c) of the Lease, which provide in full:

"(b)     [Defendant] shall tender exclusive possession of the Premises to [plaintiff] within five (5) days after the Permitting Expiration Date or such earlier date on which [plaintiff] notifies [defendant] that the Permits have been obtained or that [plaintiff] has waived the contingency related thereto. Promptly after the Effective Date of this Lease, [defendant] shall cause the Land to be altered and improved in accordance with the terms and provisions set forth on **Exhibit B** attached hereto (the "**Construction Provisions**") and the scope of work set forth on **Exhibit B-1** (collectively, the "**Landlord Work**"). Except for the Landlord Work, [plaintiff] hereby accepts the Land 'as is' without any representation, warranty, or expectation as to the condition of the Land (except as otherwise

expressly set forth in this Lease to the contrary).

"(c)    On and after the Commencement Date, [plaintiff] shall have the right, at [plaintiff]'s sole cost and expenses and substantially in accordance with the TI Plans (as defined below), to construct any and all Improvements on the Land now or in the future desired by [plaintiff], not to exceed one retail floor (but may include a mezzanine), and to demolish and remove any such Improvements (provided, [defendant] shall have approval rights [said approval not to be unreasonably withheld, conditioned or delayed] with respect to any construction and alterations involving the Approval Criteria, as defined below).  Any Improvements demolished and removed by [plaintiff] pursuant to the preceding sentence shall become the property of [plaintiff] and [plaintiff] may retain any amounts received with respect thereto, whether for salvage or otherwise."

Compl. Ex. A, at 6 (emphases in original).  First, like the previous provision cited by plaintiff, Section 2(b) of the Lease does not discuss or otherwise reference either the Commencement Date or Rent Commencement Date.  It does address the timeline for defendant to tender exclusive possession of the Premises to plaintiff, however, that timeline is tied to the Permitting Expiration Date, not the Commencement Date or Rent Commencement Date.  Section 2(b) thus does not alter the Court's analysis.  Subsection (c), by contrast, does reference the Commencement Date.  However, it does not purport to redefine or otherwise clarify or alter the definition of Commencement Date.  The connection made by this section between plaintiff's access to or construction on the Premises and the Commencement Date is wholly unrelated to the determination of the Commencement Date itself.  For these reasons, Section 2(c) also does not alter the Court's analysis.

Defendant also argues that the force majeure clause supports its interpretation of the Lease. Defendant asserts that, by its terms, this clause excuses any performance due by the parties other than the payment of rent, and therefore, "delays in completion of the Landlord[] Work due to events outside of [defendant]'s control excuse [defendant]'s strict compliance with, among other things, the Scheduled Completion Dates set forth in the lease."  Def. Resp. 13.  The force majeure clause provides in full:

"For purposes of this Lease and the exhibits attached hereto, '**Force Majeure**' shall mean an event including strikes, riots, acts of God, shortages of labor or materials, war, governmental approvals, laws, regulations, or restrictions, or any other cause of any kind whatsoever which is beyond the reasonable control of [defendant] or [plaintiff], as the case may be.  Financial inability or lack of funds shall not under any circumstances constitute Force Majeure.  In the event that [defendant] or [plaintiff] believes that any event that would constitute Force Majeure has occurred, such party shall give the other party written notice of the occurrence of the event, the obligation to be performed hereunder that may

11

> be affected as a consequence of the occurrence thereof, and the actions proposed to be undertaken by such party to mitigate or overcome such event of Force Majeure; and in any case, the party claiming the occurrence of an event of Force Majeure shall be obligated to undertake commercially reasonable measures to overcome or mitigate such event of Force Majeure. Force Majeure shall not excuse payment of Rent or other payments or charges due and owing by either party under this Lease."

Compl. Ex. A, at 33 (emphasis in original). To begin, it is noteworthy that this provision does not reference either the Commencement Date or Rent Commencement Date. Like the provisions discussed already, the force majeure provision does not purport to redefine or otherwise clarify or alter the definition of the Commencement Date. Moreover, plaintiff does not argue that an event of force majeure excused or is excusing payment of rent. Instead, plaintiff argues that rent is not due at all because the Rent Commencement Date has not yet occurred. The force majeure provision of the Lease does not affect the Court's analysis of either the Commencement Date or Rent Commencement Date.

As noted, defendant also asserts that plaintiff waived its right to argue or is estopped from arguing that the Commencement Date is later than June 10, 2023. "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). The party seeking to establish waiver must show that "the conduct relied upon [is] clear, decisive and unequivocal of a purpose to waive the legal rights involved." *Groves v. Prickett*, 420 F.2d 1119, 1126 (9th Cir. 1970). The doctrine of estoppel is "closely related" to waiver, "and sometimes it is difficult to distinguish between the two." *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 157, 26 P.3d 785 (2001) (citing *Smith v. Martin*, 94 Or. 132, 141, 185 P. 236 (1919)). However, a court may find estoppel even where the court has not found waiver: *e.g.*, "a party [] may be estopped from relying on [a] provision if that party led the other party to believe that the provision had been waived, and the other party relied on that perceived waiver." *Id.* at 158 (citing *Smith*, 94 Or. at 141; *Waterway Terminals Co. v. P. S. Lord Mech. Contractors*, 242 Or. 1, 26-27, 406 P.2d 556 (1965) (en banc)).

Defendant has not alleged facts to establish either waiver or estoppel. Defendant's own allegations indicate that plaintiff has repeatedly and consistently opposed any assertion that the

Commencement Date or Rent Commencement Date have occurred or that rent is due. Despite defendant's conclusory allegation otherwise, defendant offers no allegations that identify any intentional conduct by plaintiff to evince a "clear, decisive and unequivocal" purpose to waive the legal right involved. *Groves*, 420 F.2d at 1126. Likewise, defendant offers no allegations that indicate that plaintiff led defendant to believe that the Commencement Date or Rent Commencement Date provisions had been waived. For the reasons already described, it is not a reasonable inference to make from plaintiff's mere possession of or construction on the Premises that plaintiff intended to waive these provisions. For these reasons, defendant's claims of waiver and estoppel fail.

Furthermore, defendant's arguments on these points are, in essence, an urging of the Court to consider extrinsic evidence in interpreting the definitions of the Commencement Date and Rent Commencement Date. Similarly, defendant's argument that "[t]he Lease can be plausibly and reasonably interpreted to protect both parties" is, in essence, an urging of the Court to apply a maxim of construction to the Lease. Where, as here, the disputed provisions are unambiguous, the Court's inquiry ends at the first step of the contract interpretation analysis, and consideration of extrinsic evidence and maxims of construction are neither necessary nor proper.

Because the unambiguous language of the Lease makes clear that rent is not yet due, all of defendant's counterclaims that are premised on the non-payment of rent necessarily fail as a matter of law. This includes defendant's counterclaim for express breach of contract premised on the theories that plaintiff refused to enter a commencement date agreement and failed to surrender the Premises upon demand. Regarding the commencement date agreement, defendant points to Section 3(c) of the Lease. This section provides in full: "At the request of either [party], within thirty (30) days after the Rent Commencement Date, [the parties] shall execute a commencement date agreement setting forth the exact Commencement Date, Rent Commencement Date and Expiration Date of this Lease." Compl. Ex. A, at 9. Under the plain terms of this provision, a party is only required to enter a commencement date agreement upon the request of the other party within thirty days after the Rent Commencement Date. Where the Rent Commencement Date has not yet occurred, there is no obligation to enter the agreement, and thus there can be no breach for

refusing to do so. This theory is therefore premised on rent being due and fails accordingly.

Regarding plaintiff's failure to surrender the Premises, defendant points to Section 28(b)(ii) of the Lease. This section provides that if plaintiff should default under the terms of the Lease, then defendant, "[w]ith or without terminating th[e] Lease, [] may give [plaintiff] written notice to surrender the Premises to [defendant] on a date specified in such notice . . . at which time [plaintiff] shall surrender and deliver possession of the Premises to [defendant] unless the" default is cured. *Id.* at Ex. A, at 28-29. Defendant alleges that when plaintiff refused to pay rent, defendant elected under this provision not to terminate the Lease and provided notice to plaintiff to surrender the Premises. Where the Court has found that rent is not due, plaintiff's failure to pay rent cannot serve as the "default" giving rise to the notice and subsequent obligation to surrender the Premises. Thus, this theory also fails as a matter of law.

2.    *Prejudice*

Defendant also argues that if the Court should choose to dismiss any of defendant's counterclaims, dismissal should be without prejudice and with leave to amend. Specifically, defendant "requests an opportunity to allege additional facts supporting [its] claims of waiver and estoppel[;] [plaintiff]'s early construction on the Premises; the calculation of the Commencement Date; the calculation of the Rent Commencement Date; or interpretation of the Lease." Def. Resp. 16.

A court "shall grant leave to amend freely 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Fed. R. Civ. P. 15(a)). In the Ninth Circuit, "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Thus, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear, upon *de novo* review, that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

With one exception, defendant's rent-related counterclaims are appropriately dismissed with prejudice and without leave to amend. The Court has reviewed the Lease and found that the Commencement Date and Rent Commencement Date provisions are unambiguous as a matter of law. The Lease has been submitted to the Court in its entirety, and any additional facts alleged cannot alter the Court's

interpretation of it. Thus, defendant's counterclaims premised upon rent being due are appropriately dismissed with prejudice, as any amendment to these claims would be futile.

However, dismissal is granted without prejudice and with leave to amend as to the issues of waiver and estoppel. To the extent that there exist facts not yet alleged which evince conduct by plaintiff that indicates a "clear, decisive and unequivocal" purpose to waive the definitions of Commencement Date and Rent Commencement Date in the Lease, defendant may amend its answer to allege such facts. Any amended answer must be filed within thirty days of the date of this Opinion and Order and must rely on facts beyond those already alleged. To be clear, however, any additional allegations must amount to more than defendant's current argument that taking possession of or beginning construction on the Premises— even if prematurely or in violation of the Lease—is sufficient to constitute a waiver of the Commencement Date and Rent Commencement Date provisions. "Although [waiver] can preclude the assertion of legal rights, it cannot be used to impose legal duties." *Groves*, 420 F.2d at 1125 (citation omitted). To the extent that defendant's allegations regarding waiver are premised solely on plaintiff's conduct of accessing or beginning construction on the Premises, defendant appears to argue that plaintiff's access to or construction on the Premises has created the affirmative legal duty to pay rent, and these allegations must fail as a matter of law. Simply put: merely accessing or beginning construction on the Premises, even if "prematurely," is insufficient to constitute a clear, decisive and unequivocal waiver of plaintiff's legal right or to reasonably indicate that plaintiff intended to waive these provisions such that it should be estopped from enforcing them.

For the foregoing reasons, the Court dismisses with prejudice the following of defendant's counterclaims: (1) the first count of defendant's breach of contract counterclaim, in full; (2) part of the second count of defendant's breach of contract counterclaim, for implied breach of contract based on the theory that plaintiff is improperly withholding rent; and (3) part of defendant's counterclaim for declaratory judgment, including defendant's request for an order declaring the Commencement Date, Rent Commencement Date, and whether plaintiff is to surrender possession of the Premises to defendant. The Court dismisses without prejudice defendant's allegations regarding waiver and estoppel. The following

claims survive: defendant's implied breach of contract claim, based on the theories that plaintiff attempted to have defendant billed for costs that plaintiff is responsible for paying, wrongfully rejected defendant's claims of force majeure, and wrongfully attempted to interfere with construction of the hotel; and part of defendant's request for declaratory judgment, specifically, the request for an order declaring that force majeure applies to the Landlord Work.

## CONCLUSION

For the reasons stated herein, plaintiff's Motion to Dismiss, ECF [8], is GRANTED. All of defendant's rent-related counterclaims are DISMISSED with prejudice and without leave to amend. Defendant's allegations as to waiver and estoppel are DISMISSED without prejudice. Defendant's remaining counterclaims survive, as outlined in this Opinion and Order.

IT IS SO ORDERED.

DATED this 26th day of September, 2025.

_____
Adrienne Nelson
United States District Judge